Baldwin, J.
It is very clear that a purchase of goods from the owner, by means of a deceit as to the genuineness or value of the consideration paid, is not a theft but a cheat. It is essential to a larceny, that the property be taken without the consent of the owner, which cannot be in the case of a sale perfected, however fraudulently that consent may have been obtained. Numerous cases, it is true, have occurred in which persons have been convicted of larceny who acquired possession of the thing by the consent of the owner, fraudulently obtained, for the purpose of enabling the offender to appropriate it feloniously; but in all such cases, the owner has consented to part with the possession only, and not the property. The true distinction, in the language of an accurate writer, is, “that if by means of any trick or device, the owner of property is induced to part with the possession only, still meaning to retain the right of property, the taking by such means, will amount to larceny; but if the owner part not only with the possession of the goods, but the right of property in them also, the offence of the party obtaining them, will not be larceny.” 2 Russ. Crimes 28.
In this case, the evidence at the trial tended to prove substantially, that Given, the plaintiff in the action, sold and delivered to the person calling himself Harris, under whom Williams, the defendant in the action, derivatively claimed, the negro girl in controversy, at the price of 382 dollars 50 cents, which was thereupon paid by the purchaser in counterfeit bank notes, by which means the vendor was defrauded, he receiving them under the belief that they were genuine, and the purchaser knowing them to be counterfeit; that Williams subsequently purchased the slave from one Webb, who had acquired her from Harris, for the sum of 350 dollars, which he paid; and that he was a fair purchaser without notice of the fraud practised upon Given. The purport of the instruction given by the Circuit court to *271 the jury is, that if they believed from the testimony, the object of the person who purchased from Williams, was to pass to him counterfeit bank notes, knowing them to be counterfeit, and that he did so by obtaining from him the slave in controversy, and paying for her in such counterfeit notes, which were received in payment by Given, under the belief that they were genuine, that the title to the property did not pass to the purchaser, notwithstanding such sale and delivery; and that no title was subsequently acquired by Williams, by his purchase of the slave for a valuable consideration, without notice of the means by which she had been obtained from Given.
The question is thus presented, whether the vendor of a slave, who has been induced to part from his possession and property to the purchaser, by a fraudulent payment of the price in counterfeit money, can recover the slave so sold, from one who derives title from the first vendee, by a bona fide purchase for a valuable consideration, and without notice of the fraud.
All idea of larceny being thus excluded by the evidence, and by the instruction itself; if that instruction be correct, it must be upon the broad proposition, that a purchase of goods from the owner, by means of a deceit as to the genuineness of the consideration, is in itself void, and the property may be recovered by the vendor, not only from his vendee, but from a bona fide purchaser under him; or that if this be not true as a general proposition, still it is so in reference to such a fraud when accomplished by means which the law punishes as a felony.
The general proposition, it seems to me, is not correct. A fraud affecting injuriously the consideration of a sale, does not render the contract absolutely void between the parties themselves, but voidable only at the election of the vendor: and it cannot be avoided by him as against a purchaser from the vendee, for a valu *272 able consideration without notice of the fraud. If this were otherwise between the parties, it would sometimes prove prejudicial to the vendor himself, whose interest it may be, under some circumstances, to treat the contract as valid. And as to innocent purchasers, it would be a rule fraught with great evil, to make them responsible for every fraud practised in the course of the derivation of their title. The law on this subject is, I think, correctly stated in the case of Rowley v. Bigelow, 12 Pick. R. 307, in which it was held “ to be well settled, that where there is a contract of sale, and an actual delivery pursuant to it, a title to the property passes, but voidable and defeasible as between the vendor and vendee, if obtained by false and fraudulent representations. The vendor, therefore, can reclaim his property as against the vendee, or any other person claiming under him and standing upon his title, but not against a bona fide purchaser without notice of the fraud. The ground of exception in favour of the latter is, that he purchased of one having possession under a contract of sale, with a title to the property, though defeasible and voidable on the ground of fraud; but as the second purchaser takes without fraud, and without notice of the fraud, he takes a title freed from the taint of fraud.”
The doctrine on this subject is ably expounded in Somes v. Brewer, 2 Pick. R. 184, in which conveyances obtained by fraud and imposition, and without valuable consideration, in consequence of the weakness of the grantor’s mind, were sought to be set aside, against a purchaser from the grantee for valuable consideration and without notice of the fraud. In that case, Parker, Ch. J. delivering the opinion of the Court, after examining the authorities, says : “ The ground of these decisions is the same in relation to real and personal estate. It is, that a delivery of the thing by the owner to one who has also the evidence of ownership, *273 by the act of the party transferring, gives such an appearance of property to the party in possession, that the purchaser under him shall not be disturbed by the antecedent fraud.” He states the distinction to be the same as in the law of Scotland, “ between the case of a sale by consent of the vendor, though unlawfully obtained, and an apparent sale by means of violence, such as theft and forgery, [the latter of course in relation to the instrument of conveyance,] in which case there is no consent of any kind and that “ a sale resulting from the act and consent of the owner, conveys a title which is defeasible only while the thing remains in the hands of the vendee.”
And now as to the special proposition in reference to a fraud accomplished by means which the law punishes as a felony. The nature or degree of punishment which the law may attach to the fraudulent pretence or contrivance, cannot affect the title of the subsequent innocent purchaser. The knowingly passing of counterfeit money in payment of goods purchased, was not a felony at common law, but was punishable as a cheat. 2 Russ. Crimes 281-2-3; and its having been made a felony by statute, has no bearing upon the consent of the owner to part with his property. His consent, and the means employed to obtain it, are just the same since, that they were before the statute. If his consent were rendered absolutely null and void by the criminal punishment of the means used to obtain it, the effect would be to subject the offender moreover to a prosecution for larceny. But no case can be found in which the question was made to turn upon the degree of criminality of the false pretence employed to induce the owner to part with his property. In Rex v. Small, 2 Russ. Crimes 39, 40, the prisoner obtained goods from a servant by payment of a bad half crown, the servant having no authority to part with the goods without payment, and it was held to be larceny, if the intent was *274 to obtain the goods without paying for them; and even that case, though it turned upon the authority of the servant, has been questioned. On the other hand, in Parker's Case, 2 Russ. Crimes 25, where a servant having general authority to sell, sold goods, receiving in payment fabricated bills passed to him as genuine, it was held not to be larceny, the property having been parted with as well as the possession. In Rex v. Atkinson, 2 East’s P. C. 673, the prisoner sent a third person to the prosecutor, with a forged letter purporting to be written by one Broad, requesting the loan of three pounds for a few days. The money was sent and delivered to the prisoner. After conviction, all the Judges held that this was no larceny, on the ground that the property was intended to pass by the delivery of the owner.
That an innocent purchaser from a fraudulent vendee acquires good title, is shewn by the strong case of Parker v. Patrick, 5 T. R. 175. There the goods of the defendant were obtained from him by false pretences, and were pawned to the plaintiff without notice. The defendant prosecuted the offender to conviction for the misdemeanor, and got possession of his own goods again. The plaintiff brought trover and recovered.
The case of Mowrey &c. v. Walch, 8 Cow. R. 238, is very much in point. There, a person calling himself Stevens, came to the plaintiffs’ factory in Easton, and presented a forged paper purporting to be signed by Isaac Bishop, mentioning Stevens as a person who wished to purchase cotton goods, as one who might safely be trusted, and assuming to pay whatever amount the plaintiffs might supply him with. The plaintiffs’ clerk sold to Stevens the cotton cloths in question, which he took to Lansinburgh the next day, and sold to the defendant. The plaintiffs afterwards demanded the goods of the defendant,.who refused to surrender *275 them, and trover was brought. Savage, Ch. J. delivering the opinion of the Court, said: “ It seemed to be conceded, on the argument, that if the goods were taken feloniously, no title passed from the vendors, and they might pursue and take the goods wherever found. Such is the law in England, unless the stolen goods are sold fairly in market overt. And as we have in this State no such market, sales can have no other effect than mere private sales in England. It follows, that in this State, any sale of stolen goods does not divest the title of the owner. It is proper, therefore, to en-quire whether the goods in question were feloniously taken. Larceny is defined by East, to be the wrongful, or fraudulent taking, or carrying away by any person, of the mere personal goods of another, from any place, with a felonious intent to convert them to his, the taker’s, own use, without the consent of the owner. East’s P. C. 553. It is, therefore, important, in cases of delivery of possession by the owner, to enquire whether he intended to part with the possession or with the property; for if the latter, by whatever fraudulent means he was induced to give the credit, it cannot be felony. 2 East’s P. C. 668. The delivery of the goods to Stevens was clearly intended to be an absolute sale. It was not, therefore, a case of larceny. The jury have found that the goods were fairly purchased by the defendant Stevens, without any notice of the fraud. The question then arises upon a case where the goods are obtained by fraud from the true owner, and the price paid to the fraudulent vendee, without notice, by a stranger, which is to sustain the loss, the owner or the stranger.” And the Court held that the innocent purchaser for a valuable consideration must be protected, and denied the motion of the plaintiffs for a new trial.
It can hardly be supposed that the Circuit court meant, and I have not so construed its instruction to the jury, that the property in question was, in the case sup *276 posed,, feloniously obtained from the owner. The only sense in which goods can be said to be so obtained, is where the circumstances constitute larceny; and it is in that sense only that they are ever said in the books to pave Peen obtained by felony.
I am of opinion that the instruction of the Circuit court to the jury was erroneous, and therefore that the judgment ought to be reversed and a new trial directed. Upon the question whether the Circuit court erred in overruling the motion made for a new trial, on the ground that the verdict was contrary to evidence, I deem it most proper to express no opinion, inasmuch as the cause is to go back for a new trial, and that may be had upon a correct exposition of the law, and perhaps a more thorough development of 'the facts.
The other Judges concurred.
The following is the judgment of the Court:
It seems to the Court, that where the owner of personal goods sells and delivers the same to a purchaser, a title to the property passes, though voidable and defeasible. as between the vendor and vendee, if obtained by false and fraudulent representations of the latter to the injury of the former in regard to the consideration, in which case the vendor may reclaim his property as against the vendee; but not against a bona fide purchaser from or under the vendee, for a valuable consideration paid, without notice of the fraud: And that the rule on this subject is not varied by the circumstance that the fraudulent purpose has been accomplished by the vendee’s knowingly paying the consideration in counterfeit money, received by the vendor under the belief of its being genuine. It seems therefore to the Court, that the Circuit court erred in its instruction to the jury: And it is considered that the judgment of the Circuit court be reversed and annulled, with costs to the *277 plaintiff in error. And it is farther considered that the verdict of the jurors be set aside, and the cause remanded to the Circuit court for a new trial thereof, upon which new trial the said instruction is not to be repeated, nor any instruction to be given to the jury in conflict with the principles above declared.